IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DeANDRE WILLIAMS, #403-958 | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION NO. DKC-15-1891 |
| WARDEN RICHARD D. DOVEY | : | |
| LIEUTENANT RICHARD THOMAS[1] | | |
| SERGEANT ROBERT SELLERS | : | |
| SERGEANT JOSHUA CASTLE | | |
| | : | |
| Defendants | | |

**MEMORANDUM OPINION**

Pending is a Motion to Dismiss or for Summary Judgment filed by Defendants Warden Richard D. Dovey, Lt. Richard Thomas, Sgt. Joshua Cast and Sgt. Robert Sellers. ECF No. 12. Plaintiff has not filed a response.[2] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted.

**Background**

Plaintiff is a Maryland Division of Correction ("DOC") prisoner currently incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland. Plaintiff seeks unspecified injunctive and declaratory relief[3] and money damages against Defendants in their individual

---

[1] The Clerk shall amend the docket to reflect the full spelling of Defendants' names.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on October 30, 2015, Plaintiff was notified that Defendants had filed a dispositive motion. ECF No. 13. The notice informed Plaintiff that he was entitled to file opposition to that motion within seventeen days and that his failure to file a timely or responsive opposition showing a genuine dispute of material fact could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.*

[3] Plaintiff has been transferred to another facility. To the extent that his request for injunctive and declaratory relief was intended as a request for transfer, the claim has been rendered moot. *See Williams v. Griffin*, 952 F.2d 829, 823 4th Cir. 1991); *see also Altizer v. Deeds,* 191 F.3d 540, 543 n. 6 (4th Cir. 1999).

capacities pursuant to the civil rights act, 42 U.S.C. § 1983 and the Prison Rape Eliminate Act ("PREA"). He alleges that on September 3, 2014, while housed at Maryland Correctional Institution – Hagerstown ("MCIH") he was sexually assaulted by fellow prisoner Thomas Posey, resulting in a "physical altercation." ECF No. 1 at pp. 1, 3. Plaintiff contends that he informed Defendants Sellers, Castle, and Thomas as well as other correctional officers about the events that led up to the physical altercation, but received no response. ECF No. 1 at p. 3. He further claims that Defendants failed to investigate the sexual assault, failed to report the assault to the Internal Investigative Division ("IID"), and treated him like a suspect, rather than as a victim. *Id.* Plaintiff also claims his Administrative Remedy Procedure ("ARP") complaint and appeal concerning the incident were ignored. *Id.*

Defendants present a far different version of events. On September 3, 2014, at approximately 7:10 p.m., as G-1 Tier at MCI-H was preparing to exit to the large courtyard for recreation, C.O. II Tammy Shatzer called a 10-10 code (fight in progress) after she observed Plaintiff and Thomas Posey striking each other in the head and torso. ECF No. 12-4 at pp. 4, 11 and 14[4] (September 4, 2014 Memorandum to Director of Security Operations from Ronald B. Brezler, MCI-H's Chief of Security, attaching Serious Incident Report (SIR) #14-098). Both men were ordered to stop fighting but initially failed to comply. Officer Nathan Ellis handcuffed and escorted Posey, while Officer Brooks Caskey handcuffed and escorted Plaintiff. Officer Corey Swisher recovered the homemade weapon - a "rock in a sock" – and Officer Jonathan Weaver recovered bloody clothing. *Id*. at pp. 3-8 and pp. 20-21.[5] Both men were escorted to the infirmary where they were examined by medical staff. *Id*. at pp. 4-8 and 16-19. Plaintiff denied

---

[4] This Memorandum Opinion references pagination assigned by the court's electronic docketing system.

[5] Exhibit 1 has been redacted at pp. 3 and 16-19, as to Plaintiff and Posey's birth dates.

2

receiving any injuries from the altercation. *Id*. at pp. 16-17. When examined by Laura Ausherman, R.N., no injuries were found on Plaintiff's scalp, torso, extremities, hands, or beneath his socks. *Id*.; *see also* ECF No. 12-18 (Medical and Psychological Record, September through December 2014). Posey, on the other hand, suffered three visible puncture wounds to the scalp that required sutures. ECF No. 12-4 at pp. 18-19. Both men, the blood spill, and the bloody clothing were photographed. *Id.* at pp. 22-32.

In his written statement, Plaintiff stated that "this has been going on for a month or so," and that Posey was "pushing up on me." coming to his cell, getting him out for showers, and coming to his slot asking him if he needed anything. *Id*. at p. 9. Plaintiff stated that approximately a month earlier he told Posey that he "did not know what type of time he was on," but Plaintiff was not on any "homosexual time or faggy time," and Posey was to stay away from him. *Id*. Plaintiff indicated that Posey stayed away for a couple of weeks, but started to pursue him again. *Id*. Plaintiff stated that on Sunday, August 31, 2014, Posey placed a note in a newspaper stating he was attracted to Plaintiff and fond of his body, and if Plaintiff let him "show him," Plaintiff would not be "displeased." *Id*. Plaintiff concluded his inmate statement claiming that out of fear for his life and "manhood" he hit Posey with a rock. *Id*. The Internal Investigative Unit (IIU)[6] was contacted, entered the incident into the barracks log, but declined to assign a case number. *Id*. at pp. 1 and 4.

Both inmates received infractions and were moved to the segregation unit and placed on administrative segregation pending adjustment. *Id*. at pp. 4, 10-15; ECF No. 12-6 (Plaintiff's Adjustment Hearing Record dated September 11, 2014, Case No. 2014-004 and ECF No. 12-8, Posey's Adjustment Hearing Record, Case No. 2014-007); ECF No. 12-8 (Offender Case Management System (OCMS) Printout of Plaintiff's Traffic History), and ECF No. 12-9 (OCMS

---

[6] IIU currently is known as the Intelligence and Investigative Division ("IID").

Printout of Posey's Traffic History).  Both prisoners were charged with violating inmate rule #102 (assault or battery on another inmate), and served with the notices of infraction the day of the incident.  ECF No. 12-6 at pp. 10-12 and ECF No. 12-7 at pp. 10-12.  At their respective adjustment hearings held on September 11, 2014, before Adjustment Hearing Officer Peter Juknelis, both pled guilty to the rule violation.  Plaintiff received 180 days on disciplinary segregation from September 3, 2014, and a mandatory loss of 120 days of good conduct credits (GCC), and Posey received 30 days on disciplinary segregation from September 3, 2014, and a mandatory loss of 30 GCC.  ECF No. 12-6 at pp. 4-12 and ECF No. 12-7 at pp. 4-12.  Both were served with the hearing officer's recommendation and sanctions that same day.  ECF No. 12-6 at p. 4 and ECF No. 12-7 at p. 4.  On September 29, 2014, Warden Dovey affirmed Hearing Officer Juknelis' recommendation and sanctions, and both prisoners were served with the Warden's Decision on October 1, 2014.  ECF No. 12-6 at pp. 1-3 and ECF No. 12-7 at pp. 1-3.

Defendant Thomas avers that he is the Lieutenant in charge of Housing Units (H.U.'s) #3 and #4 (North side), assigned to the 4-12 shift.  ECF No. 12-10 (Declaration of Lt. Richard Thomas).  Thomas further avers that Plaintiff was assigned to H.U. #5 (South side) at the time of the incident, and had not been housed in H.U.'s #3 or #4 since 2013.  *Id*. at ¶4.  Thomas further states under oath that he can recall no interaction with Plaintiff prior to the incident of September 3, 2014.  *Id*. at ¶5.

Defendant Sellers avers that he photographed Plaintiff in August 2014, and at that time Plaintiff did not disclose anything about a "situation" of any kind.  ECF No. 12-11 at ¶3 (Declaration of Sgt. Robert Sellers).  Sellers further avers that he did not speak with Plaintiff again until the night of the assault.  *Id*. at ¶4.

Defendant Castle avers that at no time prior to the assault did Plaintiff bring any type of information concerning a problem to his attention. ECF No. 12-12 at ¶3 (Declaration of Sgt. Joshua Castle). Castle further avers that Plaintiff never stated that he was physically assaulted by inmate Posey, sexually or otherwise. *Id*. Castle avers that Plaintiff was not assigned to his housing unit at the time of the assault incident. *Id*. Castle states under oath that following the assault on September 3, 2014, he interviewed Plaintiff, who openly admitted to assaulting Posey. *Id*. at ¶4. When Castle asked him why he did it, Plaintiff stated that Posey was "hitting on him;" when the cell slots were open due to heat, Posey would approach his cell and always attempt to talk to him, passing him newspapers and such. *Id*. Castle avers that Plaintiff proceeded to tell him that on the day before the assault, Plaintiff received a newspaper from Posey containing a note from him stating that he "liked his body." *Id*. When Castle asked Plaintiff if he still had the note, Plaintiff stated that he threw it away, and remained in his cell for a day thinking about what to do about it before ultimately deciding to assault Posey. *Id*. Castle also avers that at no point did Plaintiff state that he was assaulted, sexually or otherwise, prior to his attack on Posey. *Id*. Sgt. Castle indicates that Plaintiff stated that he felt that he could not let the incident with the newspaper go because he had a long sentence to do and that he felt it would open others up to try to "push up on him." *Id*.

Betty McNamee, Administrative Aide to the Warden/Litigation Coordinator for MCIH, avers that all incoming letters to the Warden are logged on the computer into a database. ECF No. 12-13 at ¶3 (Declaration of Betty McNamee). McNamee further states that she reviewed the log and found that the Warden received five items of correspondence from Plaintiff. *Id*. On August 5, 2014, Plaintiff made a request to reinstate visits; on September 3, 2014, Plaintiff complained about the mail; and on October 2, November 5, and December 2, 2014, Plaintiff

5

requested a decrease in his segregation sentence. On August 8, 2014, Defendant Dovey reinstated visits, effective that day. *Id*. The mail complaint was referred to Administrative Captain Wingert, and the requests for a decrease in segregation were referred to Salvatore Mauriello, Correctional Case Management Specialist II (CCMS II), for handling. *Id*.

Case Manager Kelly Easton avers that on February 27, 2015, Plaintiff was placed on "administrative segregation 120 status." ECF No. 12-14 at ¶3 with attachments (Declaration of Kelly Easton, CCMS II).[7] Easton further states that on March 2, 2015, she chaired an administrative segregation team that interviewed Plaintiff. *Id*. at ¶4. At that interview, Easton explained to Plaintiff that he had been placed on administrative segregation 120 status because he has a documented enemy at MCI-H, and would be placed on "any medium security" transfer list. *Id*. at ¶¶4 and 6 and pp. 3-6. Easton further avers that Plaintiff was informed that he would be reviewed every 30 days until he was transferred. *Id*. Plaintiff made no mention of a sexual assault to the team during that interview. *Id*. Easton indicates this interview was the sole time she saw and spoke with Plaintiff. *Id*. at ¶5. Plaintiff was assigned to disciplinary segregation status from September 11, 2014 to March 2, 2015, and Salvatore Mauriello was assigned as his case manager. *Id*.

On April 3, 2015, Plaintiff filed ARP MCI-H #0198-15, alleging that he was sexually assaulted by Posey on September 3, 2014. ECF No. 12-15 (ARP MCI-H #0198-15, dated April 3, 2015, ARP Case Summary dated April 14, 2015, ARP Response dated April 15, 2015, with ARP Appeal dated April 25, 2015, and ARP Appeal Response dated May 15, 2015, attached). Plaintiff's ARP was investigated and dismissed on September 15, 2015, because on September 3, 2014, the day of the altercation between Plaintiff and Posey, Plaintiff reported that Posey made

---

[7] The documents have been redacted to omit direct contact information regarding staff and Plaintiff's personal identification information.

sexual comments to him, not that he was sexually assaulted by inmate Posey. *Id*. at p. 1. The response noted that IIU declined to assign a case number for the incident, and that Plaintiff had been interviewed several times since the incident, and did not report being sexually assaulted. *Id*. The response also noted that Plaintiff was placed on administrative segregation for his protection following the incident. *Id*.

On April 24, 2015, Plaintiff filed an ARP Appeal that was investigated and dismissed on May 15, 2015, because the Warden fully addressed Plaintiff's complaint. The dismissal further noted that according to Operating Procedure Statement ("OPS") 185.0002, "The Department does not permit the use of an informal resolution process or ARP to resolve complaints of rape, sexual assault, sexual harassment, sexual abuse misconduct, inmate on inmate sexual conduct, or other areas afforded protections by standards established under the authority of the Prison Rape Elimination Act (PREA), and related Department procedures." Plaintiff was advised that no further action was warranted through the ARP process. *Id*. at pp. 9-11.

As noted, IID initially declined to assign a case number because the incident was reported as an assault involving mutual combatants. ECF No. 12-16 at p. 2 (Department of Public Safety and Correctional Services (DPSCS) Intelligence & Investigative Division (IID) Report, Case No.: 15-35-00658 I/IR, with Undated Certification Declaration of Britt Bringle, Management Associate, attached). It was noted that Plaintiff alleged the incident that occurred on September 3, 2014, was the result of Posey's advances on him, and Plaintiff claimed that he was forced to take action due to Posey's attempts to take sexual advantage of him. *Id*. Because the incident pertained to Plaintiff's claim of sexual assault by inmate Posey, IID's then Director, Mark J. Carter, determined that a case number should be issued to investigate the allegations of a sexual assault. *Id*. The original SIR packet and Matters of Record (MORs) were attached to the

IID Report. *Id*. Plaintiff was interviewed by Detective/Sergeant William Justice. *Id*. at p. 5. During that interview, Plaintiff stated that Posey told him that he was sexually attracted to him, but there was no sexual contact between them. *Id*. Because there was no sexual contact, no criminal charges were filed; no further investigation by IID was needed; and the case was closed. *Id*. Pursuant to PREA standards, on June 18, 2015, Plaintiff was notified of the disposition of IID's investigation, and both local and regional PREA Compliance Coordinators were notified that IID's investigation concluded the claim was unsubstantiated. *Id*. (Revised Prison Rape Elimination Act (PREA), Executive Directive (ED) Number COS.200.0004, establishing policy for DPSCS prohibiting inmate on inmate sexual conduct; ECF No. 12-17 (Revised PREA ED No. COS.200.0004 entitled "Inmate on Inmate Sexual Conduct - Prohibited", effective March 12, 2014).

     Defendants indicate that PREA Executive Directive Number IIU.110.0011 establishes policy and procedures for DPSCS investigators to utilize while conducting an investigation of an allegation of misconduct involving a sex related offense. ECF No. 12-18 and attachments thereto (PREA ED No. IIU.110.0011 entitled "Investigating Sex Related Offenses", effective April 1, 2014). Secretary's Revised PREA Directive DPSCS.050.0030 establishes policy for DPSCS which prohibits sexual misconduct; Secretary's Revised PREA Directive DPSCS.050.0030 entitled "Sexual Misconduct - Prohibited", effective May 12, 2014). Revised Executive Directive COS.200.0005 establishes policy and assigns responsibilities for screening individuals housed in a correctional facility under the authority of DPSCS to assess the risk of the individual being sexually abused or being sexually abusive towards other inmates. ECF No. 12-20 (Revised PREA ED No. COS.200.0005 entitled "Assessment for Risk of Sexual Victimization and Abusiveness, effective February 20, 2015). The Secretary's Revised PREA

Executive Directive Number DPSCS.020.0026 establishes DPSCS policy concerning sexual abuse and sexual harassment of an inmate. ECF NO. 12-21 (Secretary's Revised ED No. DPSCS.020.0026 entitled "Prison Rape Elimination Act - Federal Standards Compliance" effective August 7, 2015).

Thomas Sheasley served as the PREA Coordinator for MCI-H until April 2015. ECF No. 12-22 at ¶2 (Declaration of Thomas Sheasley), with attachments). Sheasley avers that an email received from IID Detective Sergeant Christopher Burton was his first notification of the September 3, 2014 incident. *Id.* at ¶¶ 2-4; ECF No. 12-22, attachment D at p. 9).

In sum, Plaintiff's allegation that he was sexually assaulted by Posey was found to be unsubstantiated. Plaintiff was transferred from MCI-H to ECI on May 11, 2015. ECF No. 12-22, attachments C and D at pp. 9-10; ECF No. 12-8 at p. 1; and ECF No. 12-16.

Based on their record evidence and declarations, Defendants argue that (1) there are no facts supporting Plaintiff's Eighth Amendment claim alleging a failure to protect him from harm; (2) any failure to report the incident as required by state policy and procedure does not, in and of itself, violate federal law; (3) the PREA does not create a private cause of action; (4) any failure to respond to ARPs is not cognizable; and (5) they are entitled to qualified immunity. Additionally, Defendant Dovey states that (6) he cannot be held liable under the facts of this case under the doctrine of respondeat superior. ECF No. 12 at pp. 12-19.

**Standard of Review**

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 12. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes

9

when ruling on a motion to dismiss." *Bosiger*, 510 F.3d at 450. However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is

likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)) Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to

file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted). Plaintiff has not filed an affidavit under Rule 56(d). In light of the foregoing, I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most

favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  Because Plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Analysis

### 1. Warden Dovey's Liability

The undersigned will first examine Warden Dovey's motion to dismiss.  The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in §1983 claims.  *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under §1983).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the

Plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). The evidence does not demonstrate that Plaintiff ever contacted Warden Dovey concerning his issues with Posey, and nothing suggests that Dovey impeded or played any role into the investigation of the incident, other than affirming the adjustment sanctions imposed by a hearing officer for Plaintiff's assault on a fellow prisoner. Dovey is entitled to dismissal.

### 2. Liability under PREA

To the extent that Plaintiff seeks to impose liability on Defendants under the PREA, he fails to state a basis for a cognizable claim. There is no basis in law for a private cause of action under § 1983 to enforce a PREA violation. "[S]ection 1983 itself creates no rights; rather it provides a method for vindicating federal rights elsewhere conferred." *Doe v. Broderick,* 225 F.3d 440, 447 (4th Cir. 2000) (internal citations omitted). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 286 (2002).

Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. *See Ball v. Beckworth,* No. CV 11–00037, 2011 U.S. Dist. LEXIS 109529, 2011 WL 4375806, at *4 (D. Mont. Aug. 31, 2011) (citing cases). "The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. The statute does not grant prisoners any specific rights." *Chinnici v. Edwards,* No. 1:07–cv–229, 2008 U.S. Dist. LEXIS 119933, 2008 WL 3851294, at *3 (D. Vt. Aug.13, 2008); *Byrd v. S. Carolina Dep't. of Corr.*, No. CIV.A.5:11-3340-MGL, 2013 WL 5309759, at *11 (D. S.C. Sept. 19, 2013)); *Chao v. Ballista*, 772 F. Supp. 2d. 337, 341 n. 2 (D. Mass. 2011); *McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n. 2

(W.D.N.Y. 2014); *West Virginia Reg'l Jail & Corr. Facility Auth. v. A.B*., 234 W. Va. 492, 515 (2014) ("PREA merely 'authorizes grant money, and creates a commission to study the [prison rape] issue...). Thus, Plaintiff fails to state a claim for liability based on an alleged violation of the PREA. *See Chapman v. Willis*, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013).

### 3. Failure to Respond to ARP Complaint

Plaintiff complains that his ARP complaint and appeal regarding the incident was ignored. ECF No. 1 at 3. There is no constitutional right to the establishment of a prison grievance system. Further, the court is familiar with DOC practice to decline an ARP investigation when an investigation also is convened before the IID. *See generally, Lynch v. Keionen et al.,* Civil Action No. GLR-13-998 (D. Md.), ECF 27, p. 8; *Bogues v. McAlpine, et al.*, Civil Action No. CCB-11-463 (D. Md.), ECF 23, Ex. 4, p. 23; *Oliver v. Harbough, et al.,* Civil Action No. ELH-11-996 (D. Md.), ECF 31, pp. 7-8. Therefore, this claim is dismissed.

### 4. Failure to Protect

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment, *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and scrutiny under the Eighth Amendment "is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An inmate has an Eighth Amendment right to be protected from violence perpetrated by other prisoners. *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014); *Farmer v. Brennan*, 511 U.S. 825, 833-35 (1994).

In *Danser*, the Fourth Circuit explained:

> This constitutional right derives from the Supreme Court's holdings that the treatment an inmate receives in prison and the

> conditions under which he is confined are subject to scrutiny under the Eighth Amendment. [*Farmer*, 511 U.S.] at 832-33. Because being assaulted in prison is not "'part of the penalty that criminal offenders pay for their offenses against society,'" *id*. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), prison officials are responsible for "protect[ing] prisoners from violence at the hands of other prisoners." *Id* at 833 (citations and internal quotation marks omitted).

*Id*. at 346.

Further, the *Danser* Court said,

> An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right. [*Farmer*, 511 U.S.] at 834; *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010). First, a prisoner must establish a serious deprivation of his rights in the form of a "serious or significant physical or emotional injury." [ ] *Brown*, 612 F.3d at 723; *see also De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013). . . . The second element … requires that a plaintiff show that the prison official allegedly violating the plaintiff's constitutional rights had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation and internal quotation marks omitted). In this context, the required state of mind that must be established is a "deliberate indifference to inmate health or safety." *Id*. (citations omitted).

*Id*. at 346-347.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer* 511 U.S. at 833-34 (citations omitted). A prison official "must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997).

Here, it is undisputed that Plaintiff suffered no injury. Indeed, he was the aggressor, and inflicted injury on the fellow prisoner whom he believed was "pushing" him toward sexual contact. Accepting as true Plaintiff's details of Posey's behavior prior to the incident, it appears that Posey ultimately might have posed a serious threat to Plaintiff. Plaintiff, however, never expressed his concern about Posey's behavior to correctional staff; instead, he chose to take matters into his own hands, and assault Posey with a "rock in a sock." Thus, Plaintiff cannot show that Defendants had a "sufficiently culpable state of mind," or that they had any reason to infer "constructive notice" of a risk of harm. *Farmer* at 840-43.

Furthermore, there is simply no indication that Plaintiff suffered any sexual assault from Posey. Certainly Plaintiff never indicated that sexual contact occurred, until seven months after the incident. Plaintiff's statements given shortly after the incident to investigating officials and his ARPs written to the Warden do not make any reference to his alerting staff that he feared for his safety or that he had been sexually assaulted by Posey prior to the incident that led to Plaintiff's placement on segregation status.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit any evidence to support his claim, or to put the material fact of this case--the failure to protect--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). Although the non-moving party may rely upon a verified complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.

1991), Plaintiff's Complaint is not verified and he failed to file opposition to Defendants' dispositive motion.

### 5. Failure to Follow State Policy and Procedure

Plaintiff claims Defendants failed to investigate his allegation of sexual assault and did not report it to IID for an investigation. ECF No. 1 at 3. Even if this court were to assume that Plaintiff had a due process right to a full investigation,[8] the record belies his allegation that his concerns were ignored. Defendants are entitled to summary judgment on this claim.

Defendants' dispositive motion, construed as a motion for summary judgment, is granted.[9] A separate Order follows.

  March 2, 2016             _____/s/_____
Date                                DEBORAH K. CHASANOW
                                           United States District Judge

---

[8] Typically, a mere violation of State law or regulation would not provide a basis for a due process violation. *See Weller v. Dept. of Social Serv.,* 901 F.2d 387 (4th Cir. 1990); *Riccio v. County of Fairfax,* 907 F.2d 1459, 1469 (4th Cir. 1990).

[9] In light of the foregoing, the court need not address Defendants' claim that they are entitled to qualified immunity.